BRUCKNER & WALKER LLP
William L. Bruckner SBN 132677
Charles F. Walker SBN 175852
4550 Kearny Villa Road, Suite 209
San Diego, California 92123
(858) 565-8300 telephone
(858) 565-0813 facsimile
cfw1234@aol.com
Attorneys for John C. Siegman

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN C. SIEGMAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PITNEY BOWES INC., a Delaware corporation doing business as Pitney Bowes Group 1 Software,<br><br>Defendants. | Case No.  Case No.  08cv0842-JM (BLM)<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES:<br><br>BREACH OF CONTRACT, VIOLATION OF LABOR CODES, FRAUD AND FALSE PROMISE, NEGLIGENT MISREPRESENTATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, QUANTUM MERUIT<br><br>**JURY TRIAL DEMANDED** |

**GENERAL ALLEGATIONS**

COMES NOW, Plaintiff JOHN C. SIEGMAN (Hereinafter "Plaintiff" or "SIEGMAN"), and for causes of action against defendant PITNEY BOWES INC., ("PITNEY BOWES") a Delaware corporation doing business as Pitney Bowes Group 1 Software, and alleges as follows:

1. This action is a civil action wherein this Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332 (a) and the removal of this action by

FIRST AMENDED COMPLAINT

1

Case 3:08-cv-00842-JM-BLM   Document 13   Filed 07/09/2008   Page 2 of 14

Defendant under 28 U.S.C. § 1441 (b).  Venue is proper in this court pursuant to 28 U.S.C. §§ 84(d), 1391, 1446.

2. Plaintiff is, and at all times mentioned in this complaint was, an individual residing in San Diego County, State of California, and doing business out of his home for PITNEY BOWES, located at 17330 Via Del Campo, San Diego, 92127.

3. Plaintiff is informed and believes, and on the basis of such information and belief, alleges that Defendant PITNEY BOWES is and at all times herein mentioned was, a corporation duly organized under and by virtue of the laws of the state of Delaware, and is authorized to transact business in the state of California and is doing business in the County of San Diego, State of California with Corporation No. C0186264.

**FIRST CAUSE OF ACTION**

(Breach of Part Written, Partially Oral, Part Conduct

and Implied in Fact Contract against PITNEY BOWES)

4. Plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 3, inclusive, of the above General Allegations as if fully set forth herein and further alleges:

5. In 2007, SIEGMAN was employed by PITNEY BOWES in the capacity of Vice President Business Geographics Sales.  SIEGMAN was paid a salary plus a commission (collectively "wages") based upon a certain percentage of his dollar volume of software and related sales.  The terms of his employment contract identifying the amount of wages to be paid was based upon sales quotas established, set forth and offered by PITNEY BOWES and its authorized officers.  The sales quotas were based upon previous years' quotas, dealings and conduct between the parties, verbal communications, and written documentation and implied in fact understandings between PITNEY BOWES' authorized agents and SIEGMAN.   (The "Contract")

6. In years prior to 2007, SIEGMAN and his employer adopted a method of commission compensation that was based upon previous years' quotas, dealings and conduct

FIRST AMENDED COMPLAINT

2

between the parties, verbal communications, and written documentation and implied in fact understandings between the employer and SIEGMAN. Prior to end of year pay outs for 2007, SIEGMAN was compensated fully in accordance with the compensation plan and package established by the employer.

7. In 2007, SIEGMAN extended an inordinate amount of energy, time and focus to achieving the highest volume of software sales he could achieve and obtain. To the detriment of his personal time and family time, SIEGMAN devoted long hours to extensive out of state travel to facilitate and accommodate the sales of his employer's software and related services. In furtherance of his devotion and goals for his employer, SIEGMAN would leave on the earliest airline flights available in order to make timely meetings on the East Coast and other parts of the country.

8. During 2007, PITNEY BOWES' payroll department sent regular reports and documentation to SIEGMAN in San Diego, California indicating his commission percentages. The documents also set forth a written system for tracking sales. Each and every month, SIEGMAN reviewed the documentation to insure that his yearend bonus commission was on track for accurate and complete payout. During 2007 at varying intervals and times, SIEGMAN had discussions with PITNEY BOWES' authorized agents to verify that the sales quota for 2007 was accurate and that his sales were on track for significant level based commissions if he hit or exceeded "plan." After an exhausting year of travel and busy schedule of sales appointments, SIEGMAN earned wages based upon his actual quota for 2007; an end of year payout consisting of December 2007 commissions, annual bonus and related bonus of $961,169.81. In February 2008, PITNEY BOWES paid SIGMAN $79,523.38 towards his earned commissions. After receipt of the partial payment of wages, SIEGMAN inquired with PITNEY BOWES why he was shorted on his wages and SIEGMAN was advised that the $79,523.38 was his final commission and he would not be receiving any more wages for 2007.

9. PITNEY BOWES has failed and neglected to compensate SIEGMAN in accordance with the terms of the parties' contract and understanding for payment of earned

FIRST AMENDED COMPLAINT

3

wages. PITNEY BOWES failed to pay wages in the amount, time and manner required by the parties' contract. PITNEY BOWES refuses to pay SIEGMAN as required under the law. PITNEY BOWES breached its contract with SIEGMAN.

10. The Contract was amended and supplemented by oral and written communications between and amongst the parties. SIEGMAN has performed and at all times stood ready to perform all conditions, covenants and promises required on his part to be performed and in accordance with the terms and conditions of the Contract, except those which have been waived, prevented or excused by the actions and conduct of PITNEY BOWES and/or its agents or representatives.

11. As a direct and proximate result of PITNEY BOWES' breach of the Contract, SIEGMAN has been damaged in an amount reasonably believed to be in excess of $880,651.37 for unpaid wages, prejudgment interest of approximately $46,032.75, attorneys' fees, costs, statutory and civil penalties pursuant to statute.

WHEREFORE, SIEGMAN prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

(Violation of Labor Code against PITNEY BOWES)

12. Plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 11, inclusive, of the above General Allegations and Cause of Action as if fully set forth herein and further alleges:

13. SIEGMAN contends that he was not paid in full for his 2007 sales commissions. SIEGMAN is employed by PITNEY BOWES INC. in the capacity of Vice President Business Geographics Sales. SIEGMAN works in the Group 1 Software Division, a unit of PITNEY BOWES. Group 1 Software designs and sells geo-coding type software that identifies and cross references demographics, geographic data, public and private information from various data bases and internal records to improve data processing and end-use productivity for many private, public and government industries throughout the country and abroad.

FIRST AMENDED COMPLAINT

4

14. Pursuant to California Labor Code § 218.5 this is an action brought for the nonpayment of wages. As heretofore alleged, SIEGMAN was an employee working at PITNEY BOWES. PITNEY BOWES refused to pay SIEGMAN wages in the amount of $881,646, or an amount according to proof at trial together with interest.

15. Pursuant to California Labor Code § 218.5, the Court is required to award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. Such fees and costs were requested upon initiation of the action in Superior Court and SIEGMAN reiterates the request in his First Amended Complaint.

WHEREFORE, SIEGMAN prays for judgment as set forth below.

### THIRD CAUSE OF ACTION

(Intentional Misrepresentation / False Promise and Fraud in the Inducement

against PITNEY BOWES)

16. Plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 15, inclusive, of the above General Allegations and Causes of Action as if fully set forth herein and further alleges:

17. PITNEY BOWES, through its authorized representatives and employees, each of whom were acting within the course, purpose and scope of their agency and employment, with the knowledge, consent, and express and implied permission of their employer, made promises to SIEGMAN regarding material facts without any intention of performing on the promises. PITNEY BOWES promised SIEGMAN that his commissions would be paid in accord with the monthly payroll reports and based upon a sales quota established prior to launching into 2007 sales to third party customers. In 2007, SIEGMAN was paid a salary plus he was told by the authorized representatives that he would be paid a commission based upon a certain percentage of his dollar volume of software and related sales.

18. The authorized representatives told, represented to and promised SIEGMAN that his sales quota was based upon previous years' quotas, his prior dealings and the monthly

commission statements for 2007 to be prepared by PITNEY BOWES. As established going into 2007, PITNEY BOWES, through its authorized representatives, affirmatively set SIEGMAN's 2007 quota at $7,475,135.98. This was not a random number; it was succinctly calculated and analyzed by PTINEY BOWES and given to SIEGMAN as his target sales quota with measurable incentives for hitting or exceeding the quota.

19. PITNEY BOWES, through it authorized representatives, and imputed to it, had the existence of the aforementioned intent, or lack of intent, at the time of making the promise to SIEGMAN. At the time of making the promises and representations to SIEGMAN, PITNEY BOWES had no intent to perform on its promises. PITNEY BOWES knew of target sales quota criteriabut if it did as promised, it would have had to pay SIEGMAN over $800,000 for his efforts.

20. The promises and representations were made with intent to deceive and with intent to induce SIEGMAN to spend in excess of 40 hours per work to find deals for the company at the sacrifice of SIEGMAN's family life and personal time. The promises and representations were made with intent to deceive and with intent to induce SIEGMAN to agree to continue working for PITNEY BOWES and to enter into the transactions with the goal of exceeding the target sales quota. PITNEY BOWES' false promises were made with the intent to get a high sales volume out of a dedicated employee's personal time without having to compensate the employee for the sales. SIEGMAN's sales volume for 2007 was $28,585,251.61; an extremely impressive and unprecedented total. It is an amount that PITNEY BOWES now desires to reverse engineer to arrive at a commission for SIEGMAN that is more digestible for PITNEY BOWES. PITNEY BOWES now claims that it never promised such sales commissions to SIEGMAN.

21. The promises and representations were relied on by SIEGMAN. At the time PITNEY BOWES made the false promises, and before SIEGMAN agreed to undertake the task of working beyond what was required, SIEGMAN was unaware and ignorant of the falsity of the promises and he reasonably believed the promises to be honest, forthright, entire, complete

and accurate, and he reasonably and justifiably relied on the representations and promises. SIEGMAN trusted PITNEY BOWES because his was merely an employee at the servitude of his employer. SIEGMAN had no idea that PITNEY BOWES never intended to do what it promised to do. In 2007, SIEGMAN extended an inordinate amount of energy, time and focus to achieving the highest volume of software sales he could achieve and obtain; all to the detriment of his personal time, his children and family. SIEGMAN devoted long hours to extensive out of state travel to facilitate and accommodate the sales of PITNEY BOWES' software and related services. In furtherance of his devotion and goals for his employer, SIEGMAN would leave on the earliest airline flights available in order to make timely meetings on the East Coast and other parts of the country. He was not required to do such things in his scope of employment without being compensated for the sale commissions that exceeded plan. In 2007 SIEGMAN closed a very significant transaction with State Farm Insurance Companies for $9,482,750.00. The figure for the one sale was $2,007,614.02 in excess of his total annual quota of $7,475,135.98

22. During 2007, PITNEY BOWES' payroll department sent regular monthly reports and documentation to SIEGMAN in San Diego, California indicating his commission percentages. The documents also set forth a written system for tracking his sales. Each and every month, SIEGMAN reviewed the documentation to insure that his yearend bonus commission was on track for accurate and complete payout. During 2007 at varying intervals and times, SIEGMAN had discussions with PITNEY BOWES' authorized agents to verify that the sales quota for 2007 was accurate and that his sales were on track for significant level based commissions if he hit or exceeded "plan." After an exhausting year of travel and busy schedule of sales appointments, SIEGMAN earned wages based upon his actual quota for 2007; an end of year payout consisting of December 2007 commissions, annual bonus and related bonus of approximately $961,169.81.

23. The party making the promise did not perform. PITNEY BOWES did not perform on its promises or in conformance with its representations. In February 2008,

FIRST AMENDED COMPLAINT

7

1 PITNEY BOWES paid SIGMAN $79,523.38 towards his earned commissions. After receipt of the partial payment of wages, SIEGMAN inquired with PITNEY BOWES why he was shorted on his wages and SIEGMAN was advised that the $79,523.38 was his final commission and he would not be receiving any more wages for 2007. SIEGMAN is owed $880,651. PITNEY BOWES created a December 2007 sales commission statement indicating what was owed to SIEGMAN for each month. The statement included quarterly bonus and deferred commissions of $565,555.30. In addition to the commission above, SIEGMAN was entitled to PITNEY BOWES' "Annual Bonus" and "Super Bonus" if a certain volume of sales was achieved. PITNEY BOWES, through its authorized representatives told SIEGMAN that he would not be receiving his fully earned commissions.

24. The party to whom the promises and representations were made was injured. SIEGMAN was not paid for his commissions. The Annual Bonus percentage was set by PITNEY BOWES at 1.08%. This percentage was supposed to be applied to the entire amount of dollars eligible for SIEGMAN's bonus, in this case $26,577,637.59; which equates to $286,161.81. The Super Bonus percentage was set by PITNEY BOWES at 1.44%. This percentage was supposed to be applied to the total amount of eligible revenue above 100% of plan. Since SIEGMAN had $26,577,637.59 in total eligible revenue, less an annual quota amount of $7,475,135.98, SIEGMAN's basis for Super Bonus calculation was $19,102,501.61; which to equates to $274,235.88 for the Super Bonus payout. The Annual Bonus of $286,161.81 plus the Super Bonus of $274,235.88 equals $560,397.69; which SIEGMAN received neither. Since the maximum payout number of $394,619.44 is less than the combined bonus number of $560,397.69, the maximum payout number is the one used for SIEGMAN's end of year check calculation. Taking the commission amount of $565,555.30 and adding in the maximum payout amount of $394,619.44 brings the commission due for December 2007 to $960,174.75. $960,174.75 - $79,523.38 = $880,651.37 which is the amount SIEGMAN is owed. Furthermore, PITNEY BOWES's conduct was and is malicious, oppressive, outrageous and despicable, and in conscious disregard of SIEGMAN's rights to tranquility and emotional

FIRST AMENDED COMPLAINT

8


stability. PITNEY BOWES acted with a malicious state of mind arising from ill will toward SIEGMAN which shows its willingness to vex, annoy and injure SIEGMAN. PITNEY BOWES's malicious, oppressive, outrageous and despicable behavior entitles SIEGMAN to punitive and exemplary damages in a sum calculated according to the net worth of PITNEY BOWES in its corporate capacity or according to proof at trial to set an example and punish PITNEY BOWES.

WHEREFORE, SIEGMAN prays for judgment as set forth below.

## FOURTH CAUSE OF ACTION

(Negligent Misrepresentation against PITNEY BOWES)

25. Plaintiff realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 24, inclusive, of the above General Allegations and Causes of Action as if fully set forth herein and further alleges:

26. PITNEY BOWES made the misrepresentations and false promises to SIEGMAN as alleged heretofore.

27. PITNEY BOWES' representations and promises were not true.

28. PITNEY BOWES had no reasonable grounds for believing the representations and promises were true when it made them.

29. PITNEY BOWES intended that SIEGMAN rely on the representations and promises.

30. SIEGMAN reasonably relied on PITNEY BOWES' representations and promises.

31. SIEGMAN was harmed.

32. SIEGMAN's reliance on PITNEY BOWES' representations and promises were a substantial factor in causing SIEGMAN's harm and damages. SIEGMAN has been damaged in an amount believed to be in excess of 880,651.

WHEREFORE, SIEGMAN prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION

(Quantum Meruit against PITNEY BOWES)

33. SIEGMAN realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 32, inclusive, of the above General Allegations and Causes of Action as if fully set forth herein and further alleges:

34. During the period of time in 2007 when SIEGMAN extended an inordinate amount of energy, time and focus to achieve the highest volume of software sales he could achieve and obtain to the detriment of his personal time and family time to facilitate and accommodate the sales of his employer's software, he did so with time that was far in excess of what was required of him under the labor laws in California and other states. In furtherance of his devotion and goals for his employer, and in excess of any amount of time required of an exempt employee, SIEGMAN would leave on the earliest airline flights available in order to make timely meetings on the East Coast and other parts of the country to further PITNEY BOWES sales. SIEGMAN did these things because he was told he would receive his commissions and he rendered the work, labor and services to and for PITNEY BOWES' primary benefit.

35. At the time SIEGMAN rendered the work, labor, and services to PITNEY BOWES, SIEGMAN believed that PITNEY BOWES would pay for the reasonable value of the work, labor and services as promised.

36. At all times mentioned in this complaint, the reasonable value of the work, labor, and services rendered by SIEGMAN exceeded the value of the total payments SIEGMAN received from PITNEY BOWES.

37. The law imposes an obligation upon PITNEY BOWES to pay for the reasonable value of SIEGMAN's work, labor and services that exceeded exempt employee status given the false promises and false representations aforementioned. The work, labor and services were provided to the benefit of PITNEY BOWES and to the detriment of SIEGMAN. As a direct and proximate result of providing the requested work, labor and services to PITNEY BOWES

and upon PITNEY BOWES' refusal to pay for the reasonable value thereon, SIEGMAN has been damaged in an amount reasonably believed to be in excess of the minimum jurisdiction of this Court or in an amount according to proof at trial, together with prejudgment interest.

WHEREFORE, SIEGMAN prays for judgment as set forth below.

## SIXTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress against PITNEY BOWES)

38. SIEGMAN realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 37, inclusive, of the above General Allegations and Causes of Action as if fully set forth herein and further alleges:

39. The conduct of PITNEY BOWES heretofore alleged was and is extreme and outrageous behavior that exceeds all bounds of reason of modern society and its conduct has been without any regard for SIEGMAN's rights, peace of mind, personal security, his family or his plans of what to do with his fully earned commissions, among other things as alleged herein.

40. PITNEY BOWES's actions and conduct, aforesaid, were and was done with the intent, desire and knowledge to substantial degree of certainty to cause severe emotional distress and mental suffering and harm and it engaged in said conduct through its authorized representatives with the outrageous and reckless disregard of the probability of causing severe emotional anguish and emotional and physical distress upon SIEGMAN. The actions of PITNEY BOWES were outrageous, intentional, and malicious and done with reckless disregard of the fact that it would certainly cause SIEGMAN to suffer severe emotional and physical distress.

41. As a direct and proximate result of PITNEY BOWES' actions, conduct, fraud, false promises and non-actions, SIEGMAN has suffered and continues to suffer severe emotional distress and resulting physical manifestations directly due to PITNEY BOWES' outrageous conduct and he has suffered from fear, fright, horror, headaches, nausea, panic,

nervousness, discomfiture, anxiety, and worry which is directly traceable to PITNEY BOWES' disgusting conduct and oppressive conduct.

42.  PITNEY BOWES' conduct was and is malicious, oppressive, outrageous and despicable, and in conscious disregard of the SIEGMAN's rights to tranquility and emotional stability. PITNEY BOWES acted with a malicious state of mind arising from ill will toward SIEGMAN which shows its willingness to vex, annoy and injure SIEGMAN. PITNEY BOWES' malicious, oppressive, outrageous and despicable behavior entitles SIEGMAN to punitive and exemplary damages in a sum calculated according to the net worth of PITNEY BOWES in its corporate capacity or according to proof at trial to set an example and punish PITNEY BOWES.

WHEREFORE, SIEGMAN demands judgment as set forth below.

## SIXTH CAUSE OF ACTION

(Negligent Infliction of Emotional Distress against PITNEY BOWES)

43.  SIEGMAN realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 42, inclusive, of the above General Allegations and Causes of Action as if fully set forth herein and further alleges:

44.  The conduct of PITNEY BOWES heretofore alleged was and is extreme and outrageous behavior that exceeds all bounds of reason of modern society and its conduct has been without any regard for SIEGMAN's rights.

45.  PITNEY BOWES's actions and conduct, aforesaid, were done with either the intent to cause emotional distress or harm, or its engaged in said conduct through its officers and authorized representatives with reckless disregard of the probability of causing emotional anguish, emotional and physical distress to SIEGMAN.

46.  As a direct and proximate result of PITNEY BOWES's actions, conduct and non-actions, SIEGMAN has suffered and continues to suffer severe emotional distress directly due PITNEY BOWES' outrageous conduct and plaintiff has suffered from fear, fright, horror, panic, nervousness, discomfiture, anxiety, and worry which is directly traceable to PITNEY

BOWES' conduct. SIEGMAN has been injured and damaged in an amount in excess of this minimum jurisdiction of this Court.

WHEREFORE, SIEGMAN demands judgment as set forth below.

1. For special, compensatory and consequential damages in the amount of Eight Hundred Eighty Thousand Six Hundred Fifty One Dollars ($880,651.) or an amount according to proof at trial;

2. For prejudgment interest;

3. For Statutory and Civil Penalties;

4. Statutory waiting time compensation;

5. For punitive damages;

6. For costs of suit and attorneys' fees pursuant to statute incurred herein; and,

7. For such other further relief as the Court deems just and proper.

Respectfully submitted,

DATED: July 9, 2008                BRUCKNER & WALKER LLP

*s/Charles F. Walker*
Charles F. Walker  /s/ e-file
Attorneys for John C. Siegman

FIRST AMENDED COMPLAINT

**CERTIFICATE OF SERVICE**
Case No. 08 CV 0842-JM (BLM)

I hereby certify that on July 9, 2008 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for the case.

_____
Tiffany Adams